Anthony L. Evans appeals from a judgment by the Circuit Court of Madison County upholding the termination of his employment with the City of Huntsville ("the City"). The question presented is whether the procedure used by the City to effect Evans's termination complied with the requirements of due process.
Evans had worked in the City's waste treatment plant for approximately four years before he was terminated. The incident that gave rise to his termination occurred after a meeting between Evans and two of his supervisors, J.S. Dickinson and Willie Christa. Apparently, Evans and Dickinson became angry with one another during that meeting and Evans left, despite being ordered by Dickinson to remain. Evans then went to the employees' break room and, according to affidavits and testimony from coworkers, threw his hard hat into a corner and began cursing his supervisors. Those curses included threats of physical harm to Dickinson and Christa. Evans's behavior was reported to Dickinson, who then filed the charges that ultimately led to Evans's termination.
Pursuant to the policies set out in its Employee's Handbook, the City gave Evans written notice of the charges against him and informed him that an evidentiary hearing before an impartial hearing officer had been scheduled. The purpose of that hearing was to determine if Evans had violated any of the Handbook's rules governing employee conduct. The hearing officer's function is to make findings of fact, not to recommend or to assess punishment; those decisions are left to the employee's supervisor or department head.
Evans was represented by an attorney at the hearing. He was allowed to testify, to present evidence, to call witnesses, and to cross-examine witnesses called by the City. Dickinson represented the City at the hearing. After considering the testimony and evidence presented by the parties, the hearing officer issued findings of fact, reproduced in relevant part, below:
 "After a careful consideration of all the testimony and a study of the exhibits offered in evidence, including the employee's personnel records, the Hearing Officer concludes that there is merit in one of the specifications and that the employee is guilty of conduct prohibited under Section 6B, Paragraphs (d) and (i) of the Handbook. The Hearing Officer finds that the employee did in fact on January 28, 1986, use violent, profane language directed against his superior Shannon Dickinson, on City time and in the presence of fellow employees. The Hearing Officer has carefully considered the testimony of fellow employee Rodney Yarbrough and other employees and finds that on or about January 28, 1986, Mr. Evans cursed his superior in a manner prohibited by the Handbook standards and, indeed, by any reasonable standard of employee conduct, even though Mr. Evans was acting under some provocation at the time."
After receiving the hearing officer's findings of fact, Dickinson terminated Evans's employment. Evans appealed his termination to the Huntsville City Council, and that body, after considering arguments from both parties, upheld the termination. *Page 1325 
Evans appealed the City Council's decision to the circuit court. Because there is no statutory right to appeal decisions of the City Council in employment cases, the circuit court properly utilized common law certiorari to review the decision.Personnel Bd. of Jefferson County v. Bailey, 475 So.2d 863, 867
(Ala.Civ.App. 1985). Therefore, its scope of review was limited to determining if the decision to terminate Evans was supported by legal evidence and if the law had been correctly applied to the facts. Ex parte Bracken, 263 Ala. 402, 405,82 So.2d 629, 631 (1955); Bailey, supra, at 868. In addition, the court was responsible for reviewing the record to ensure that the fundamental rights of the parties, including the right to due process, had not been violated. Ex parte Greenberg,395 So.2d 1000, 1002 (Ala. 1981). The court held that the City had acted properly and upheld its decision to terminate Evans's employment. Evans appeals.
Evans argues that Dickinson's involvement in each stage of the termination proceedings was so pervasive that it violated his right to procedural due process. In essence, he contends that as a result of being a "victim" of Evans's alleged insubordination, Dickinson could not fairly perform his function as the City's representative during the evidentiary hearing and, most importantly, could not make an unbiased decision regarding the degree of punishment that was appropriate after he had received the hearing officer's findings of fact.
It is settled that the right to a fair trial, including the right to an unbiased decisionmaker, applies to administrative agencies that adjudicate as well as to courts. Chandler v. Cityof Lanett, 424 So.2d 1307, 1310-11 (Ala. 1982); Ex parteGreenberg, supra. In Withrow v. Larkin, 421 U.S. 35, 46,95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), the United States Supreme Court stated that "[n]ot only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.' " (Citation omitted.) In Withrow, the Court noted a number of situations where the probability of bias on the part of the arbiter or decisionmaker was "too high to be constitutionally tolerable." Those situations included ones where, as in the instant case, the judge or decisionmaker had been the target of personal abuse or criticism from the person before him.Withrow, supra, at 47. See also, Ex parte Greenberg,supra.
In response, the City argues that its procedures adequately protected Evans's right to a fair hearing. Specifically, the City contends that because Dickinson's decision to terminate Evans was based on findings of fact that were made by an impartial hearing officer and was then subject to review by the City Council, there were adequate "checks and balances" to prevent any prejudice that could have resulted from Dickinson's possible bias. In addition, the City argues that Dickinson's decision to terminate Evans was an administrative act, not a quasi-judicial act, and, therefore, that the prohibition against a probability of bias on Dickinson's part does not apply.
We do not agree. Although the disciplinary procedure adopted by the City would, in most cases, satisfy the requirements of due process, it did not in this case. The determination as to whether due process has been complied with, as in all determinations involving issues of constitutional law, must be based on the circumstances present in the case before the court. United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519,522, 4 L.Ed.2d 524 (1960); State v. Woodruff, 460 So.2d 325,327 (Ala.Crim.App. 1984).
The decision regarding the type of discipline to be applied in Evans's case, once it had been determined that he had violated rules set out in the Handbook, appears to have been left to Dickinson. The range of possible discipline was not limited to termination, but included reprimand, demotion, and suspension for various lengths of time. Because the circumstances of this case placed Dickinson in the unusual position of being the victim, prosecutor, and judge in Evans's case, the probability that his decision would be biased and unfair was too high and amounted to a denial of due process. *Page 1326 Withrow, supra; Greenberg, supra. In light of our determination of this issue, we do not reach the other issues raised by Evans.
For the reasons stated above, the judgment is reversed, and this cause is remanded to the circuit court with directions to enter an order consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.