652 So.2d 274 (1994)
COLBERT COUNTY BOARD OF EDUCATION
v.
Clarence JOHNSON.
AV93000504.
Court of Civil Appeals of Alabama.
November 10, 1994.
*275 Michael F. Ford of Munsey & Ford, Tuscumbia, for appellant.
Margaret Helen Young of Hill, Young & Wilkinson, Florence, for appellee.
ROBERTSON, Presiding Judge.
Clarence Johnson was employed by the Colbert County Board of Education (Board) as a janitor at Colbert County High School for nine years. On May 11, 1993, Johnson received, by certified mail, a letter from the Board notifying him of its proposal to terminate his employment. At Johnson's request, the Board conducted a hearing on the proposal on June 13, 1993. On June 17, 1993, the Board voted to terminate Johnson's employment.
Johnson appealed the Board's decision to a three-member employee review panel selected pursuant to § 36-26-105, Ala.Code 1975, a provision of the Fair Dismissal Act. On September 23, 1993, the panel conducted a de novo hearing pursuant to § 36-26-106, Ala. Code 1975. Thereafter, the panel held, by a two-to-one majority, that the termination of Johnson's employment was not warranted and that the Board should reinstate him immediately.
On November 4, 1993, the Board petitioned the Colbert County Circuit Court for a writ of certiorari, requesting that the panel's decision be reversed and that the Board's decision be reinstated. The circuit court set a hearing date of March 8, 1994. On March 9, 1994, the circuit court entered an order, finding "that there was substantial evidence to support the [panel's] findings" and affirming its determination.
On appeal to this court, the Board contends that there was no legal evidence to support the panel's findings and that this court's interpretation of § 36-26-106 in Birmingham Bd. of Educ. v. Holifield, 604 So.2d 422 (Ala.Civ.App.1991), cert. denied, 604 So.2d 422 (Ala.1991), was erroneous.
The panel's review of Johnson's dismissal was de novo, and its decision to reinstate Johnson was final and binding on the parties. § 36-26-106. Review of the employee review panel, selected pursuant to § 36-26-105, is by a petition for a writ of certiorari in the circuit court. Sanders v. Broadwater, 402 So.2d 1035 (Ala.Civ.App. 1981). The circuit court's review is limited to determining whether the panel's decision was supported by any substantial evidence, whether the findings and conclusions of the panel were contrary to the uncontradicted evidence, or whether there was an improper application of the findings viewed in a legal *276 sense. Id. This court's scope of appellate review is the same as that of the circuit court. Id. "Stated differently for purposes of the instant case, if we find the actions of the [panel], in [reinstating Johnson], supported by any evidence, we must affirm." Sanders, at 1036.
The transcript of the hearing before the panel reflects that Johnson was 60 years old and that he was unable to read or write. During the nine years Johnson had worked as a janitor at Colbert County High School, he had a good attendance record, arrived at work on time, and was never disciplined by the Board.
Everett Greenhill, the principal of Colbert County High School, testified that Johnson was not satisfactorily performing his job, that he failed to correct his performance problems after he was reprimanded, and that he refused to meet to discuss those problems. Specifically, Greenhill testified that Johnson's problems began in 1989 and 1990, when Johnson and the other janitor had a disagreement about their assigned duties and neglect of duty. Then, between September 1992 and April 1993, Greenhill kept a record of 11 instances in which he had reprimanded Johnson for failing to perform or for inadequately performing his assigned tasks, such as buffing the hallway floors, cleaning the bathrooms, and trimming the weeds around the school grounds. Greenhill testified that on several occasions, he had demonstrated to Johnson how to buff the hallway floors by taking the buffer and performing the job himself while Johnson observed.
Johnson testified that he did his duty to the best of his ability, often working overtime and redoing work if he needed to. He denied having refused to perform his assigned tasks. Johnson testified that one buffer at the school had broken and that the only other buffer there did not do a good job. He testified that he often had trouble cleaning the bathrooms because he did not have the proper keys and because the school often ran out of cleaning supplies. He also testified that the partitions in the bathrooms had rusted and were falling down, that water from the upstairs bathroom was leaking into the downstairs bathroom, that flushing the commode would cause the urinals to overflow, and that the floor drain stunk because it was not equipped with a filter. Johnson testified that he tried to trim the weeds, but that the trimmer frequently did not work.
Johnson testified that he understood that, at his request, meetings regarding problems with his performance could be conducted in the presence of a representative from the Alabama Education Association. He testified that he once refused to meet with Greenhill because no representative would be present.
Greenhill admitted that he knew that Johnson had difficulty reading, that Johnson had complained about problems with the equipment, that there were structural problems in the bathrooms, and that the students' destructiveness made it more difficult to keep the building in a satisfactory condition. Greenhill also admitted that he sometimes had to telephone the county maintenance department two or three times each week to ask them to send someone to deal with problems that may have interfered with cleaning the school.
Although the Board's charges against Johnson contained numerous allegations of improper conduct by Johnson,[1] only two witnesses testified regarding such allegations. Mary Alexander, who had been employed by the Board in the cafeteria at Colbert County High School since March 22, 1993, testified that Johnson had told her that she was pretty, that she smelled good, and that she should go out to eat with him. She testified that she became uncomfortable with Johnson's attention when he put his arm around her and patted or rubbed her back. Tonya Bond, an eleventh-grade student, testified that one afternoon she had asked Johnson to help her locate the coach of the track team. While helping Bond to find the coach, Johnson offered to demonstrate how to pass the *277 baton in a relay race. She testified that instead of pretending to pass her the baton, Johnson grabbed her hand. She testified that he then rubbed her back, told her that she was pretty, and grabbed her buttocks.
Johnson denied that he had ever touched anyone in an offensive manner. He testified that he had put his arm around Mary Alexander in a friendly way, not in a sexual way; that he patted her back but did not rub it; and that he intended no offense by doing so. Alexander admitted that she never told Johnson that his compliments or touches were offensive and unwanted. Johnson also denied touching Bond, and he stated that if he did touch her, it was purely by accident. He denied telling Bond that she was pretty. He testified that he was not aware of the Board's policy against any staff member's touching, or making "offensive" comments to, members of the opposite sex.
In light of the testimony and exhibits presented to the panel, we are unable to hold that the panel's determination was unwarranted and was not supported by any evidence. Sanders.
The Board also contends that this court's interpretation of § 36-26-106 in Holifield was erroneous. The Board argues that Holifield unfairly prejudices the rights of other parties to a Fair Dismissal Act proceeding in favor of the disciplined employee because of this court's interpretation of "warranted" in § 36-26-106, Ala.Code 1975.
"When this court construes a statute, it has a duty to ascertain the legislative intent expressed in the statute. This intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained." Holifield, 604 So.2d at 424 (citation omitted).
"Warrant," when used as a verb, may mean not only "to authorize," as the Board contends, but also "to serve as justification or reasonable grounds for." Webster's New World Dictionary of the American Language, 1602 (Prentice Hall Press, 2d coll. ed., 1986). This court's interpretation, implicit in Holifield, that the Alabama Legislature intended "warranted" to mean "justified or reasonably grounded," is logically consistent with the ideas expressed in other portions of § 36-26-106, e.g., that the panel's review is "de novo"; that the panel's determination as to whether the board's actions were warranted are to be "based upon the facts of the case and the employment record of the employee"; and that "[t]he decision of the panel shall be final and binding." § 36-26-106.
Thus, the language used in § 36-26-106 confirms that, on appeal to the panel, the Board's decision does not carry a presumption of correctness that is subject to only a limited inquiry. Rather, in determining whether the Board's actions were "warranted," the panel makes an independent judgment, which it can substitute for the judgment of the Board. Holifield. Therefore, we hold that this court's interpretation of § 36-26-106 in Holifield was not erroneous.
Having addressed the issues, we are now compelled to address the dissenting opinion in this case because of certain misconceptions it may produce regarding the correct standard of review. The dissent states that the record reveals substantial evidence supporting the Board's decision to terminate Johnson's employment. While there was evidence to support the Board's decision in this case, that evidence was by no means undisputed as our opinion makes clear, and the Board's decision is not before this court.
As previously stated, our review of this case is based on the decision of the employee review panel selected pursuant to § 36-26-105. Holifield. The decision of the panel is final and binding on the parties. § 36-26-106. Review of that decision is by petition for writ of certiorari in the circuit court. Sanders, supra. "[T]he circuit court was, as is this court, limited in its review of [the panel's decision].... [F]or purposes of the instant case, if we find the actions of the [employee review panel] ... supported by any evidence, we must affirm." Id. at 1035-36 (citations omitted) (Emphasis added).
AFFIRMED.
YATES, J., concurs.
THIGPEN, J., dissents.
THIGPEN, Judge, dissenting.
*278 The original letter, notifying Johnson that his employment was to be terminated, enumerated 29 specific instances as the basis for the proposed termination. Those instances included allegations regarding poor job performance, repeated neglect of duties, insubordination, and improper conduct. I have carefully and thoroughly studied the entire transcript of the panel's proceedings. There was undisputed testimony at the panel hearing that even after repeated oral and written reprimands regarding his unsatisfactory job performance, Johnson's poor job performance continued. Roger L. Moore, Superintendent of Education of the Colbert County Schools, testified regarding the procedure followed when parents, students, or school personnel express complaints, and that the procedure was followed when complaints were received regarding Johnson. Moore testified regarding his attendance at a meeting with Johnson and Johnson's A.E.A. representative in which employment termination was discussed, and he testified that the charges against Johnson were placed in writing and sent by certified mail to Johnson. Moore testified regarding the Board hearing and the past written reprimands in Johnson's records regarding Johnson's unsatisfactory work performance and insubordination. Moore further testified that all 29 items in the letter sent to Johnson were considered as a basis for the recommendation that Johnson's employment be terminated.
Everett Greenhill, the principal, testified at the panel hearing regarding the decline in Johnson's job performance in the nine years they had worked together, more particularly, the year preceding the decision to terminate Johnson's employment. He testified regarding his numerous discussions and attempts to assist Johnson regarding his unsatisfactory job performance, and its effect on the students, the staff, and the day-to-day operation of the school, including how the unclean conditions and the manner in which Johnson performed his duties caused disruption in the school. Greenhill testified regarding eleven recorded instances wherein he had reprimanded Johnson for inadequate job performance during the 1992-93 school term, immediately preceding his recommendation that Johnson's employment be terminated. Greenhill testified regarding numerous complaints he received about Johnson from students and staff, and his investigation into the nature of those complaints. He further testified that when he explored Johnson's complaints of problems with equipment, he often found that equipment "mechanically able to do the work," or, if not, the equipment was then repaired. He testified that the school facilities and equipment were adequate, considering their age, and that adequate cleaning would help the bathrooms and other facilities. He testified that when he confronted Johnson about his failure to properly perform his job, Johnson placed blame on the facilities, the equipment, the students, the teachers, and others. In response to the only question asked Greenhill regarding the frequency of calling for assistance to repair problems which might have interfered with the cleaning of the building, Greenhill responded, "I called the maintenance departmentsome days two or three times. Sometimes it may go three weeks before we need the maintenance department. It depends on what goes wrong, whether it be electrical or in the bathroom or whatever." Clyde Goode, assistant principal, testified at the panel hearing regarding the four years he had worked with Johnson. He testified that regularly, he had to talk with Johnson regarding his unsatisfactory job performance, and that although Johnson did certain parts of his job well, as a whole, his job performance was regularly unsatisfactory.
Two witnesses testified regarding the misconduct allegations. One of those witnesses was a young female student who testified that Johnson inappropriately touched her. She testified that she told her mother about it that day, and that she also wrote a statement for the school concerning that incident. On Johnson's behalf, a long-time friend testified that because Johnson had a learning disability, dyslexia, written instructions "are virtually useless." He testified that his wife interpreted written reprimands for Johnson, and that Johnson was a good worker when assisting in his television shop. The friend then stated that Johnson "was under a tremendous personal strain" around this time, and that in his opinion, perhaps Johnson *279 needed "some attention as to an evaluation of his problems. And if the man is sick, he needs something other than termination." The friend did not testify regarding any knowledge of Johnson's work performance at school.
Johnson's testimony consisted primarily of denying certain charges when questioned, and of responding that all of the other witnesses were dishonest. He testified that his job performance was the best he could do, and that, at times, he could not perform his duties because of broken equipment, no supplies, and dilapidated school facilities. He testified regarding confrontations he had with the other janitor. Johnson further testified that Greenhill "stayed on me all the time," without saying anything to the other janitor, because Johnson felt that in Greenhill's eyes, "I'm the only janitor there." He testified that Greenhill had "always given me a hard time," and that the assistant principal and the superintendent were not truthful in their testimony, because the principal gave them untrue information. Johnson could not answer why others would make false complaints about him and testify against him. He also testified that he did not have dyslexia, but that he quit school and could neither read nor write.
The record is replete with undisputed evidence concerning Johnson's reprimands and the numerous occasions he was counseled and assisted in regard to his job performance. There was undisputed testimony regarding the repeated complaints and problems with Johnson's work performance, and the numerous efforts made by the school staff to discuss these deficiencies with Johnson and to attempt to assist him in correcting the problems with his job performance. There was undisputed testimony that Johnson neglected duties, and that when confronted about his job performance, he would become defensive and upset. There was undisputed testimony regarding the many previous attempts to verbally counsel Johnson, and the written reprimands he had been issued.
It is undisputed that Johnson had been given a written warning that subsequent problems in his work performance could result in his immediate dismissal from his job, and that in spite of that drastic warning, Johnson's performance continued to be unsatisfactory, and even declined.
My review of the record discloses substantial evidence supporting the termination of Johnson's employment, and absolutely no evidence that warrants reinstating Johnson's employment. The written decision of the panel contains no findings and conclusions; however, even if I were to assume that the panel made findings and conclusions which were necessary to support its determination to reinstate Johnson, those findings and conclusions would be completely contrary to the undisputed evidence that Johnson was not satisfactorily performing his work, and that he had continued to do so after repeated notice and written warning that employment termination could result if his performance did not improve. Because I find no evidence which supports the actions of the panel to reinstate Johnson's employment, I would reverse the trial court's judgment upholding the panel's decision, and therefore, I must respectfully dissent.
NOTES
[1] Several teachers and students had submitted written complaints regarding inappropriate behavior by Johnson. Although these complaints were introduced to the panel, they were not introduced to show the truth of the matters asserted therein, but rather to show a basis for instituting proceedings against Johnson.