Robert Hicks appeals from the Jackson Circuit Court's denial of his petition for a common-law writ of certiorari related to the termination of his employment with the Jackson County Department of Public Works ("the Department"). Hicks argues on appeal that the circuit court erred in dismissing his equal-protection and procedural-due-process claims on the basis of the doctrine of res judicata; that he has been denied procedural due process of law; and that the decision to terminate his employment was not supported by any legal evidence.
The evidence of record shows the following.[1] Beginning in early 2002, Hicks was employed by the Department as a "Highway Maintenance Technician" ("HMT"). Hicks worked as part of a crew that paved and repaired roads and maintained rights-of-way in Jackson County ("the county"). Hicks's direct supervisor was the county's maintenance supervisor, Chris Stewart. The Department is supervised by the county's engineer, Greg Richard. Regarding Richard's authority, Act No. 100, § 1, Ala. Acts 1990, provides: *Page 906 
 "It shall be the duty of the county engineer subject to the approval of the majority of the Jackson County Commission:
 "(1) to employ, supervise and direct all such assistants as are necessary to properly maintain and construct the public roads, . . . and he shall have authority to describe their duties, and to discharge said employees for cause, or when not needed."
See also § 11-6-3, Ala. Code 1975.
In May 2002, part of Hicks's driveway, which is adjacent to a county road, was washed away by rain. Hicks received permission from Stewart to have his HMT crew repair the portion of his driveway that was within the county's right-of-way. It is undisputed that HMTs do not always know the exact location of the county's rights-of-way but that, generally, the rights-of-way are 60 feet wide — 30 feet on either side of a road's center line. In certain places, the county's right-of-way may be as wide as 100 feet. In May 2002, Hicks's HMT crew repaired his driveway within the right-of-way, on the 9 or 10 feet closest to the road. It is unclear whether the HMT crew actually paved the driveway or whether it simply added chert, a type of gravel.
In September 2002, Hicks's driveway was again washed away by rain. Without seeking prior authorization, Hicks had his HMT crew repave approximately 45 or 50 feet of the driveway, about 30 feet beyond the county's right-of-way. In February 2003, again without obtaining approval, Hicks had his HMT crew pave his driveway about 30 feet beyond the right-of-way. According to Stewart, once a particular repair has been authorized, it is normal for HMTs not to seek a second authorization if the repair needs to be repeated. However, Stewart maintains he never authorized Hicks to pave the driveway beyond the right-of-way. The September 2002 and February 2003 work on Hicks's driveway cost the county approximately $475. According to Richard, Stewart authorized some of the work on Hicks's driveway, but not the amount of work that was actually done.
The Jackson County Employee Personnel Handbook ("the personnel handbook") provides, in relevant part: "Any employee may be dismissed from county service by his/her appointing authority [in this case, the county engineer] for unacceptable job performance, violation(s) of county standards, and/or for the good of the county." Furthermore, employees "may appeal their dismissals in accordance with the county grievance procedures."
The personnel handbook states that "[n]ormally, disciplinary actions will be administered by an employee's appointing authority. However, if an appointing authority refuses to take disciplinary actions for an obvious violation of county rules, the county commission may take action so long as such action is consistent with the intent of these guidelines." The personnel hand-book expressly allows termination of employment upon an employee's first violation of certain offenses. Section VIII.C.2 of the personnel handbook identifies certain offenses, Group 2 offenses, for which it recommends: "the first such offenses will normally constitute grounds for dismissal." Group 2 offenses include:
 "(6) dishonesty as related to an individual's job duties and/or profession, or use of one's official position for personal advantages;
 ". . . .
 "(10) theft, destruction, careless or negligent use, or willful damage of county property or property of others;
 ". . . [and] *Page 907 
 "(13) serious violation of county administrative regulations, department rules, lawful orders or directions made or given by a supervisor."
(Emphasis added.) The personnel handbook requires, among other things, that offending employees must be afforded the following due-process procedures: notice in writing of the proposed disciplinary action, an opportunity to be heard, an opportunity to be represented by counsel and to call witnesses at a due-process hearing, and an opportunity to respond to the disciplinary charges.
The personnel handbook, through its grievance procedures, provides employees the right to appeal adverse employment decisions, including dismissal, to the Jackson County Personnel Board ("the Board"). The personnel handbook anticipates that the Board will hold a hearing and render a decision on the appeal.
It is undisputed that in February 2003 the Jackson County Commission ("the Commission") received an anonymous complaint that alleged that Hicks had misappropriated county funds and labor by having his driveway paved beyond the right-of-way. On February 20, 2003, Richard wrote a letter to the Commission advising it of Hicks's actions. Richard stated:
 "Per the Jackson County Personnel Handbook (Section VIII-C-2b), this is a Group 2 offense, which `normally constitute[s] grounds for dismissal.' It is my opinion this is a grave offense and should minimally require a payment of $475 and a two-week suspension without pay. I will not make a final decision until an executive session with the Commission is held on this matter."
On February 27, 2003, the Commission notified Hicks by letter that it was considering possible disciplinary action against him. The letter stated, in part:
 "[Y]ou are advised of potential disciplinary action which may substantially impact your continued employment with the Jackson County Department of Public Works. The Commission will hold a due process hearing on Thursday, March 6, 2003. . . . At that meeting, the Commission will consider proposed disciplinary action to be taken under the Jackson County personnel policy, which may include termination of employment.
 ". . . .
 "If you wish to have a due process hearing on the effective date of the discipline [sic] being March 6, 2003, you have the right to appear in person at that meeting and to respond to the charges orally or in writing; to be represented by a person of your choice; to call individuals to speak on your behalf; and to question any witnesses called at the hearing by the Commission."
Hicks requested a due-process hearing, and the hearing took place before the Commission on March 6, 2003. Hicks was represented by counsel. Three witnesses, Richard, Stewart, and an HMT who repaired Hicks's driveway in May 2002, presented testimony and were cross-examined by Hicks's counsel. The record on appeal does not contain a word-for-word transcript of the hearing. It does contain a record that includes detailed notes of the questions asked and the testimony received from the witnesses. In addition to the facts stated above, those notes show the following.
Richard stated that he spoke with Hicks "after the first incident" and advised him to work only within the right-of-way. Richard denied having knowledge before the February 2003 complaint was made of Hicks's paving outside the right-of-way. After the complaint against Hicks was made, Hicks advised Richard that he had not performed such work on any other *Page 908 
driveway in the county. Richard acknowledged that Hicks may have misunderstood the extent of Stewart's authorization. The county attorney asked Richard whether the two-week suspension and reimbursement he suggested were "only as a minimum discipline with a possibility of greater discipline action up to termination." Richard responded: "The recommendation was only minimum; I consider this to be a very grave situation."
Stewart stated that he had no knowledge of Hicks's paving his driveway until after the work had been done. Stewart also acknowledged that Hicks may have misunderstood the extent of his authorization and that Hicks could not have been expected to know all of the county right-of-way. In response to questions from members of the Commission, Stewart stated that it is not normal for an HMT crew to pave from the "edge of pavement to [the] drive" and that a crew would not normally pave 21 feet past a right-of-way.
During the hearing, Hicks declined the opportunity to speak to the Commission. The Commission terminated Hicks's employment by a majority vote. Hicks reviewed the record of the hearing and added the following handwritten statement to it: "These statements are not the complete questions and answers from the hearing. There were many more questions asked and answers received."
On March 7, 2003, the Commission notified Hicks in writing of its decision to terminate his employment. That letter also stated: "In accordance with County personnel policies, you have the right to appeal the decision to the Jackson County Personnel Board."
Hicks appealed the Commission's decision to the Board, arguing that the Commission had improperly intervened in the disciplinary process established by the personnel handbook. The Board advised Hicks of its hearing procedures in writing and stated:
 "Please understand that the Jackson County Personnel Board has no authority to grant relief for any disciplinary action of any appointing authority of Jackson County. The Personnel Board can only hear complaints and/or appeals and make recommendations to the Jackson County Commission. Further, any recommendations of the Personnel Board are not binding on an appointing authority."[2]
The Board held a hearing on March 27, 2003; the record on appeal does not show the details of that proceeding. On April 3, 2003, the Board advised Hicks and the Commission in writing of its finding that the Commission "violated Section VIII of the Personnel Handbook by preempting the responsibility of the County Engineer." The Board recommended that Hicks be disciplined as Richard had suggested, i.e., by being suspended for two weeks without pay and by being required to reimburse the county.
On April 8, 2003, Richard sent a letter to the Commission stating that Hicks had committed a Group 2 offense that was grounds for dismissal under the personnel handbook. Richard stated: *Page 909 
 "Prior to, or right after the first application of mix [pavement] on his driveway, I personally told Mr. Hicks that he should `not do any more work to his driveway then [sic] is done on any other driveway in the county.' Mr. Hicks directly violated this order twice. He also admitted that he has never done work on a driveway to this extent, before or since. . . . It is my belief that Mr. Hicks knowingly violated direct orders and repaired his driveway for his own private gain. Therefore, as county engineer, I recommend and concur in the termination of his employment."
Also on April 8, 2003, the Commission held a meeting at which a majority of its members voted to concur with Richard's recommendation to terminate Hicks's employment. The Commission also requested that the Board review its April 3, 2003, decision in light of "the provisions of the local act which gives the Commission final authority regarding personnel matters and that the engineer had not made a final recommendation." Hicks maintains that he did not receive notice of Richard's letter or of the Commission's April 8, 2003, meeting; neither Hicks nor his attorney were present at that meeting. On April 9, 2003, the Commission advised Hicks in writing that it had voted unanimously to approve the termination of his employment and that his discharge was effective on March 6, 2003. On April 11, 2003, the Board affirmed its original finding and recommendation.
On August 7, 2003, Hicks filed a "petition for judicial review" with the Jackson Circuit Court ("the circuit court"); he later amended that pleading to seek a common-law writ of certiorari. Hicks alleged, among other things, that the decision was not supported by any lawful evidence and that the Commission had denied him due process of law and equal protection of the laws under the Constitutions of the United States and of the State of Alabama.
Hicks also filed a complaint against the Commission in the United States District Court for the Northern District of Alabama ("the district court") seeking relief under42 U.S.C. § 1983, on the ground that the Commission had violated his rights to procedural due process and equal protection of the laws under the Fourteenth Amendment of the United States Constitution. Hicks moved the circuit court to place his action in that court on the administrative docket until his federal case was resolved, stating that "the resolution of his federal lawsuit will have res judicata effect on some of the issues which [the circuit] court will be required to review." The circuit court granted Hicks's motion.
On June 30, 2005, the district court entered a summary judgment in favor of the Commission on Hicks's claims under42 U.S.C. § 1983. See Hicks v. Jackson County Comm'n,374 F.Supp.2d 1084 (N.D.Ala. 2005). Regarding Hicks's equal-protection argument, the district court found that Hicks "failed to establish that he was `intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment.'"Hicks, 374 F.Supp.2d at 1096 (quoting Village ofWillowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073,145 L.Ed.2d 1060 (2000)).
Regarding Hicks's due-process argument, the district court found that Hicks had no right to maintain a due-process claim under 42 U.S.C. § 1983 because the State of Alabama had not deprived him of a post-termination process by which he could seek review of the Commission's alleged procedural violation.Id. at 1090; see McKinney v. Pate,20 F.3d 1550, 1563 (11th Cir. 1994). Specifically, the district court found that Hicks could have appealed *Page 910 
the Commission's April 8, 2003, decision to the Board and that he did, in fact, appeal to the circuit court.Hicks, 374 F.Supp.2d at 1090. Quoting Evans v.City of Huntsville, 580 So.2d 1323, 1325 (Ala. 1991), the district court noted that, on certiorari review, Alabama state courts are "`responsible for reviewing the record to ensurethat the fundamental rights of the parties, including the rightto due process, [have] not been violated.Hicks, 374 F.Supp.2d at 1092. Accordingly, the district court entered a summary judgment in favor of the Commission on Hicks's § 1983 due-process claim based upon its finding that Alabama offered Hicks an adequate post-termination remedy, namely via a petition for a common-law writ of certiorari, to correct any procedural violation of the Commission.
Hicks's action in the circuit court was subsequently removed from the administrative docket, and the parties filed briefs in support of their respective arguments. On May 29, 2007, the circuit court entered an order in which it denied Hicks's petition for the writ of certiorari. The circuit court found that Hicks's due-process and equal-protection claims were barred by the doctrine of res judicata, that the Commission's decision was supported by legal evidence, and that the procedures utilized by the Commission satisfied the due-process requirements of the Constitutions of the United States and of the State of Alabama. Hicks filed a notice of appeal to this court on June 20, 2007.
The circuit court's standard of review of a petition for a common-law writ of certiorari is well settled. On a petition for a common-law writ of certiorari, the circuit court's "scope of review was limited to determining if the decision to terminate [Hicks's employment] was supported by legal evidence and if the law had been correctly applied to the facts."Evans v. City of Huntsville, 580 So.2d at 1325. "In addition, the court was responsible for reviewing the record to ensure that the fundamental rights of the parties, including the right to due process, had not been violated." Id.
"Questions of fact or weight or sufficiency of the evidence will not be reviewed on certiorari." Personnel Bd. ofJefferson County v. Bailey, 475 So.2d 863, 868
(Ala.Civ.App. 1985).
 "`"[A] common-law writ of certiorari extends only to questions touching the jurisdiction of the subordinate tribunal and the legality of its proceedings. The appropriate office of the writ is to correct errors of law apparent on the face of the record. Conclusions of fact cannot be reviewed, unless specially authorized by statute. The trial is not de novo but on the record; and the only matter to be determined is the quashing or the affirmation of the proceedings brought up for review."`"
G.W. v. Dale County Dep't of Human Res.,939 So.2d 931, 934 n. 4 (Ala.Civ.App. 2006) (quoting City of Birminghamv. Southern Bell Tel. Tel. Co., 203 Ala. 251, 252,82 So. 519, 520 (1919)). "This court's scope of appellate review is the same as that of the circuit court." ColbertCounty Bd. of Educ. v. Johnson, 652 So.2d 274, 276
(Ala.Civ.App. 1994).
On appeal, Hicks first argues that the circuit court erred in holding that his due-process and equal-protection claims were barred by the doctrine of res judicata.
 "The four essential elements of the doctrine of res judicata are:
 "`(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions. If those four elements are present, then any claim that was, *Page 911 
or that could have been, adjudicated in the prior action is barred from further litigation.'
 "Equity Res. Mgmt, Inc. v. Vinson, 723 So.2d 634, 636 (Ala. 1998). The doctrine of res judicata applies when a party attempts to relitigate
the same cause of action that was previously litigated against the same defendant or attempts to relitigate a different claim not previously litigated but which arises out of the same evidence. Id. at 636-37."
In re Estate of Hudson, 887 So.2d 923, 927-28
(Ala.Civ.App. 2004). Hicks does not make any substantive arguments or cite to any authority on appeal regarding his equal-protection argument. Accordingly, we will not address that issue. See Rule 28(a)(10), Ala. R.App. P.
Based solely on McKinney v. Pate, supra, Hicks argues that the district court lacked jurisdiction to hear his due-process claim and, therefore, was not a court of competent jurisdiction. In McKinney, the United States Court of Appeals for the Eleventh Circuit stated:
 "[I]n the case of an employment termination case, `due process [does not] require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available "the means by which [the employee] can receive redress for the deprivations."' Schaper v. City of Huntsville, 813 F.2d 709, 715-16 (5th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981)) (footnote omitted).
 ". . . .
 "The precedent established by Parratt is unambiguous: even if McKinney suffered a procedural deprivation at the hands of a biased Board at his termination hearing, he has not suffered a violation of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation."
Id. at 1562-63. It was upon this statement that the district court based its judgment in Hicks's § 1983 action.Hicks, 374 F.Supp.2d at 1089. According to Hicks, because he had not suffered a violation of his procedural-due-process rights that could be asserted in federal court because of the rule announced in McKinney, the district court was not a court of competent jurisdiction.
However, nothing in McKinney indicates that its rule is jurisdictional. Hicks does not cite to any case holding as much, and in 2000 the Eleventh Circuit Court of Appeals indicated, albeit in dicta, that dismissals under theMcKinney rule are rendered on the merits. Hortonv. Board of County Comm'rs of Flagler County,202 F.3d 1297, 1300 n. 3 (11th Cir. 2000). Accordingly, we are not prepared to say that the district court was not a court of competent jurisdiction and that it had no authority to enter a summary judgment on Hicks's claim.
Hicks also argues that the district court's judgment did not reach the merits of his "state court violation claim" and therefore was not a judgment on the merits for purposes ofres judicata. Hicks correctly notes that the district court based its judgment on the fact that the Commission's decision could be reviewed by the circuit court via a petition for a common-law writ of certiorari "`to ensure that thefundamental rights of the parties, including the right to dueprocess, [have] not been violated.'" Hicks,374 F.Supp.2d at 1092 (quoting Evans, 580 So.2d at 1325). Because the district court based its judgment on the availability of a means of review of the Commission's due-process procedures via a petition for a common-law writ of certiorari in the circuit court, it would be incongruous to hold that Hicks's *Page 912 
due-process claim in the circuit court was barred because of the district court's judgment. The district court clearly anticipated that the circuit court would, and underEvans was required to, decide whether Hicks's procedural-due-process rights had been violated. The district court's decision was based on a rule peculiar to § 1983 due-process claims asserted in federal court Although the district court found that Hicks could not maintain his claim in federal court, it did not actually rule on the merits of Hicks's procedural-due-process claim, because that claim was presented to the circuit court. Accordingly, the circuit court erred in dismissing that claim on the basis of the doctrine ofres judicata.
However, "[i]t is well settled that an appellate court may affirm a judgment if the judgment is correct for any reason, even one not argued." Surtees v. VFJ Ventures, Inc., [Ms. 2060478, Feb. 8, 2008] ___ So.2d ___, ___ (Ala.Civ.App. 2008); see also Tucker v. Nichols,431 So.2d 1263, 1264-65 (Ala. 1983); Bay Lines, Inc. v.Stoughton Trailers, Inc., 838 So.2d 1013, 1020 (Ala. 2002);Boykin v. Magnolia Bay, Inc., 570 So.2d 639, 642
(Ala. 1990); Bennett v. Bennett, 454 So.2d 535, 538
(Ala. 1984); and Upchurch v. Universal Underwriters Ins.Co., 610 So.2d 1163, 1167 (Ala.Civ.App. 1992). The circuit court expressly held that the Commission's procedures satisfied "the requirements of the Due Process Clause of the United States and Alabama Constitutions and [Hicks's] fundamental rights were protected." Thus, even if Hicks's claim is not barred by the doctrine of res judicata, we can affirm the circuit court's judgment if we agree with the circuit court that there was no due-process violation.
Hicks argues that the Commission violated his right to procedural due process when it met on April 8, 2003, received new evidence, and did not give him the opportunity to be present or to cross-examine Richard.[3]
 "`[P]rocedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one's life, liberty, or property interests are about to be affected by governmental action.' Brown's Ferry Waste Disposal Ctr., Inc. v. Trent, 611 So.2d 226, 228 (Ala. 1992). . . . In Zinermon [v. Burch, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)], the [United States] Supreme Court noted that `[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.' 494 U.S. at 125-26, 110 S.Ct. 975, 108 L.Ed.2d 100 (quoting Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978))."
City of Orange Beach v. Duggan, 788 So.2d 146, 151
(Ala. 2000).
Hicks bases his argument on the fact that the Commission received new evidence in the form of Richard's April 8, 2003, letter ("the letter"). According to Hicks, Richard did not state at the March 6, 2003, hearing, as he did in the letter, that he told Hicks not to have his HMT crew perform more work on the driveway. However, the record of the March 6, 2003, hearing shows that Richard stated: "I talked with Mr. Hicks after the first incident and told him to stay only in place of [the right-of-way]." Richard also stated in the letter that Hicks "admitted that he has never done work on a driveway to this extent, before or since." The record of the hearing shows that Richard stated: "I asked if he had done this to other drives and he answered no." *Page 913 
When Hicks signed the record of the March 6, 2003, hearing, he added the following language: "The statements are not complete questions and answers from the hearing. There were many more questions asked and answers received." Hicks did not assert that any of the statements reflected in the record of the March 6, 2003, hearing were false, nor does he do so on appeal. In light of Hicks's statement and the fact that the record of the March 6, 2003, hearing contains statements remarkably similar to those Richard made in the letter, we cannot assume that Hicks was denied an opportunity to cross-examine Richard on these matters. Cf. Berryhill v. Mutual of Omaha Ins.Co., 479 So.2d 1250, 1251 (Ala. 1985).
Richard's letter recommended that Hicks's employment be terminated. Hicks contends that this recommendation conflicted with Richard's statements at the March 6, 2003, hearing. However, the record of that hearing shows that Richard stated, in response to a question by Hicks's counsel: "I suggestedas a minimum [a suspension] of two weeks without pay and reimbursement." (Emphasis added.) In response to a question by the county attorney, Richard stated: "The recommendation was only minimum, I consider this to be a very grave situation." Additionally, the Commission had notified Hicks that his employment could be terminated. Accordingly, Hicks's counsel had ample opportunity to cross-examine Richard regarding his recommendations and the possible termination of Hicks's employment. Based on the foregoing, we conclude that Hicks was not denied notice and an opportunity to be heard on the matters stated in Richard's April 8, 2003, letter. Accordingly, the circuit court's judgment is due to be affirmed because Hicks did not show that he was denied procedural due process.
Finally, Hicks argues on appeal that the Commission's decision to terminate his employment was not based on any legal evidence. See Personnel Bd. of Jefferson County v.Bailey, 475 So.2d at 868. It is undisputed that Sections VIII. C.2.a.(6), (10), and (13) of the personnel handbook provide that the "use of one's official position for personal advantages," the "careless or negligent use . . . of county property," and the "serious violation of . . . directions made or given by a supervisor" are grounds for dismissal. It is also undisputed that Stewart only authorized Hicks to repair his driveway within the county's right-of-way and that Hicks had his HMT crew pave his driveway at least 30 feet beyond the county's right-of-way on two occasions. Hicks's actions fall within the above-quoted sections of the personnel handbook and his dismissal was appropriate under those sections. Although Hicks maintains, and the evidence indicates, that his actions may have been the result of a misunderstanding, that argument pertains to the weight of the evidence; the termination of his employment was supported by legal evidence.
Based on the foregoing, although the circuit court erred in dismissing Hicks's procedural-due-process claim on the basis of the doctrine of res judicata, we affirm the circuit court's judgment because Hicks has not shown that he was denied procedural due process or that the Commission's decision was not supported by legal evidence.
AFFIRMED.
PITTMAN, J., concurs.
BRYAN, THOMAS, and MOORE, JJ., concur in the result, without writings.
[1] In his brief on appeal, Hicks relies on the statements in his pleadings before the circuit court to support his statement of facts. Such statements by counsel in pleadings are not evidence. See Carver v. Foster, 928 So.2d 1017, 1025
(Ala. 2005). Accordingly, we have considered only the evidence in the supplemental record on appeal.
[2] The Commission asserts on appeal that the Board's recommendation is only advisory in nature, citingCarroll v. Buttram, 758 So.2d 1097
(Ala. 1999) (reversing decision that the Commission exceeded its authority in establishing the Board based on § 11-8-14, Ala. Code 1975, subsequently repealed by Act No. 488, Ala. Acts 2007, and on the fact that the Board is only advisory). Because Hicks has not raised any issues on appeal related to the Board, its proceedings, or its relationship with the Commission, we will not address issues related to the Board's authority.
[3] Hicks does not specifically enumerate this argument in his statement of the issues; how ever, it is deeply intertwined in his argument regarding the sufficiency of the evidence. *Page 914