Rel: September 27, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2024

────────────────────

### CL-2024-0269

────────────────────

### City of Montgomery

### v.

### Antavione Ferguson

### Appeal from Montgomery Circuit Court
### (CV-22-901065)

MOORE, Presiding Judge.

The City of Montgomery ("the City") appeals from a judgment entered by the Montgomery Circuit Court ("the circuit court") overturning the decision of the Montgomery City-County Personnel Board ("the board"), which had affirmed the City of Montgomery's termination of the employment of Antavione Ferguson. Because we conclude that the circuit court impermissibly substituted its judgment for

that of the board, we reverse the judgment and remand the case with instructions.

## Background

On October 20, 2020, Steven Reed, the mayor of the City of Montgomery, terminated Ferguson's employment as a lieutenant in the Montgomery Police Department ("the MPD").  Ferguson appealed to the board, which affirmed the City's termination of Ferguson's employment in a decision rendered on August 17, 2022, finding that

> "[Ferguson] violated the following [MPD] Policy:
>
> "**Violation of Written Directive 3.4.1 - Use of Force**
>
> "The [b]oard further finds the evidence supports the decision of [Mayor Reed] to terminate the employment of [Ferguson]. Accordingly, it is ordered that the action taken by [Mayor Reed] and the same (sic) be upheld."

(Underlining and bold typeface in original.)  On August 23, 2022, Ferguson filed a "notice of appeal" to the circuit court, naming the board as the "appellee" and seeking review of the board's decision.  The circuit court treated the notice as a petition for a writ of certiorari.  See Henderson v. Montgomery City-County Pers. Bd., 695 So. 2d 9, 10 (Ala. Civ. App. 1996) (holding that a final decision of the board may be

2

reviewed only through a petition for a writ of certiorari as under common law).

After hearing oral argument on March 21, 2023, the circuit court, on March 24, 2023, entered a judgment overturning the board's decision and ordering that Ferguson's employment be reinstated with back pay, subject to a punishment of suspension for 20 days without pay. The board appealed the circuit court's judgment, but this court dismissed the appeal because the board lacked standing to appeal. See Montgomery City-Cnty. Pers. Bd. v. Ferguson, [Ms. CL-2023-0333, Jan. 26, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024).

On February 21, 2024, the board filed a motion, pursuant to Rule 60(b)(4), Ala. R. Civ. P., to set aside the circuit court's judgment as void because the City had not been named as a party to the appeal to the circuit court, and, therefore, there was no justiciable case before the circuit court. That same date, the City filed a motion to intervene in the proceedings before the circuit court and filed its own Rule 60(b)(4) motion. The circuit court subsequently granted the City's motion to intervene and vacated the March 24, 2023, judgment. On March 15,

2024, the circuit court entered a judgment ("the final judgment") "rescinding" the board's decision and ordering that Ferguson shall serve a 20-day suspension, awarding Ferguson back pay, and requiring the City to reinstate Ferguson to his position in the MPD. On April 16, 2024, the City filed a notice of appeal of the final judgment.

## Jurisdiction of the Circuit Court

Before proceeding to the merits, we first consider the circuit court's jurisdiction to enter the final judgment, which the City has challenged on appeal. As noted, the circuit court properly treated Ferguson's notice of appeal as a petition for the writ of certiorari. When Ferguson filed his petition for the writ of certiorari, he named the board as the "appellee." The City contends that the petition did not invoke the subject-matter jurisdiction of the circuit court because there was no justiciable controversy between Ferguson and the board. See generally Woodgett v. City of Midfield, 319 So. 3d 1231, 1239 (Ala. 2020) (recognizing that a circuit court lacks subject-matter jurisdiction over a case when there is no justiciable controversy between the parties). Considering the nature of certiorari proceedings, we reject this argument.

4

"Certiorari at common law was an original writ issued out of a superior, to an inferior court, to bring up the record and determine, from an inspection thereof, whether the judgment of the inferior court was erroneous or without authority." Ex parte Hennies, 33 Ala. App. 377, 379, 34 So. 2d 22, 23 (Ct. App. 1948). When filing a common-law petition for the writ of certiorari, the petitioner had to name the lower tribunal whose record was to be examined as the sole respondent. See Marcus v. Commissioner of Pub. Safety, 255 Mass. 5, 8, 150 N.E. 903, 905 (1926). Upon service of the writ of certiorari, the respondent was required to certify the record of its proceedings and return the record to the superior court for inspection. See Nashville, C. & St. L. Ry. Co. v. Town of Boaz, 226 Ala. 441, 147 So. 195 (1933).

In this case, Ferguson identified the board as the "appellee," but, in substance, the board was the "respondent" to the petition for the writ of certiorari. See Drummond v. Drummond, 466 So. 2d 974, 977 (Ala. Civ. App. 1985) (holding that pleadings shall be liberally construed according to their substance and not their form). The board acted as the respondent in certifying the record of its proceedings and returning the certified

5

record to the circuit court for review. Thus, we hold that the petition properly invoked the subject-matter jurisdiction of the circuit court. The orders and judgments entered during the certiorari proceeding, including the final judgment, were not void as the City contends,[1] and this court may exercise jurisdiction over this appeal.

## Issue

The remaining issue is whether the circuit court properly overturned the board's decision affirming the termination of Ferguson's employment.

## Standard of Review

In Hicks v. Jackson County Commission, 990 So. 2d 904, 910 (Ala. Civ. App. 2008), this court stated:

> "The circuit court's standard of review of a petition for a common-law writ of certiorari is well settled. On a petition for a common-law writ of certiorari, the circuit court's 'scope of review was limited to determining if the decision to terminate [an employee's employment] was supported by legal evidence and if the law had been correctly applied to the facts.' Evans

---

[1]The circuit court nevertheless vacated the March 24, 2023, judgment as void because the City, which was asserted to be an indispensable party, was not named as an opposing party to the petition. Ferguson did not file a cross-appeal in this case, so we do not address the correctness of that action.

> v. City of Huntsville, 580 So. 2d [1323,] 1325 [(Ala. 1991)]. ...
> 'Questions of fact or weight or sufficiency of the evidence will
> not be reviewed on certiorari.' Personnel Bd. of Jefferson
> County v. Bailey, 475 So. 2d 863, 868 (Ala. Civ. App. 1985). ...
> 'This court's scope of appellate review is the same as that of
> the circuit court.' Colbert County Bd. of Educ. v. Johnson, 652
> So. 2d 274, 276 (Ala. Civ. App. 1994)."

Thus, this court will review the board's record to determine whether there is legal evidence to support its decision; we will not, however, reweigh that evidence. See Wiggins v. City of Evergreen, 295 So. 3d 43, 48 (Ala. 2019).[2] As our supreme court has explained:

> "[W]hen [an appellate] court examines the evidence, it does
> so, not to determine the probabilities preponderate one way
> or the other, but merely to determine whether the evidence
> will justify the finding as a legitimate inference from the facts
> proved regardless of whether such inference would or would
> not have been drawn by the appellate tribunal."

Alabama Elec. Coop. v. Alabama Power Co., 278 Ala. 123, 126, 176 So. 2d 483, 485 (1965).

---

[2]Throughout the proceedings before the board and the certiorari proceedings before the circuit court, Ferguson argued only that the evidence was insufficient to support the termination of his employment and that the termination had been arbitrary and capricious. Ferguson did not raise any claim that he had been denied due process, so we do not consider whether the City or the board failed to follow proper procedure when terminating Ferguson's employment.

The Evidence

On August 10, 2022, the board conducted a hearing on Ferguson's appeal. The pertinent evidence from that hearing shows that, on June 30, 2020, Ferguson subdued a felony suspect by using a chokehold.[3] The suspect had been involved in a car chase. Ferguson, who was patrolling nearby, observed the suspect twice ram his automobile into the automobile of the suspect he was chasing. After the second collision, both vehicles came to a stop in a bank parking lot. The suspect jumped out of his automobile to continue pursuing the other driver, who was then fleeing on foot. Upon arriving on the scene, Ferguson commanded the suspect to halt, but the suspect did not comply; a brief physical altercation between Ferguson and the suspect ensued. Ferguson ultimately arrested the suspect by placing him in a chokehold for approximately 54 seconds while taking him to the ground, at which point the suspect was handcuffed by other responding police officers, one of which told Ferguson to "let him go." While in the chokehold, the suspect

---

[3]At the hearing, Ferguson stipulated that he had used a chokehold on the suspect.

8

asserted that he could not breathe, and, after being released from the chokehold, he stated: "I couldn't breathe."

Since 2016, the MPD had a policy in force ("the 2016 policy"), that was set forth in a memorandum ("the 2016 memorandum") and provided that "substantiated Use of Force cases involving any form of choking of a subject will be considered a major violation and will result in disciplinary action up to and including termination."[4] The MPD also had a directive -- Written Directive 3.4.1 ("the directive") -- that had been in place since 2018 and governed "Reporting Uses of Force"; the directive provided, in pertinent part:

> "A. A supervisor is to be notified immediately and a completed Montgomery Police Department Officer Defensive Action Form Report is to be submitted whenever personnel
>
> "....
>
> "3. Takes an action that results in, or alleged to have resulted in, injury or death of another person;

---

[4]In 2019, the MPD adopted Written Directive 3.3.1, which set forth the continuum for use of force, allowing police officers to use "that force necessary to affect an arrest or otherwise accomplish an assigned task lawfully," including "empty hand control." That directive does not mention chokeholds.

"....

"5. Applies weaponless physical force at a level above empty hand control that results in, or its (sic) alleged to have resulted in, injury or death of another person."

Ferguson testified that he was aware of the 2016 policy and the directive. Within 30 minutes of the chokehold incident, Ferguson provided a written report to his direct supervisor, Captain D.K. Corkran, describing his use of force on the suspect and the surrounding circumstances leading up to that use of force, but Ferguson did not complete and submit a "Montgomery Police Department Officer Defensive Action Form Report" ("defensive-action report"). Captain Corkran testified that he had reviewed Ferguson's report and the videotapes from the MPD video cameras that had captured the chokehold incident and had concluded that Ferguson had not violated any rules or regulations of the MPD,[5] which he put forth in a memorandum that was

---

[5]Several witnesses disputed whether the circumstances justified Ferguson's employing a chokehold and whether Ferguson had engaged in excessive force.

10

introduced into evidence.[6]  Ferguson testified that he and Captain Corkran had concluded that no defensive-action report was necessary because the chokehold had not injured the suspect.

However, after an internal investigation, other officials within the MPD determined that, because Ferguson had engaged the suspect in a chokehold and had violated the directive, Ferguson should be suspended for 20 days without pay.  After an investigation and a hearing on September 8, 2020, former Circuit Court Judge Charles Price recommended to Mayor Reed that Ferguson be given the suspension. Mayor Reed, who is the final decisionmaker, rejected that recommendation and determined that Ferguson's employment should be terminated.

Mayor Reed, who took office in November 2019, testified at the September 8, 2020, hearing that, at some point before the chokehold incident, he had adopted a "zero tolerance policy," pursuant to which any substantiated use of a chokehold on a citizen by an officer of the MPD

---

[6]Corkran testified that he was subsequently "forced" to change his memorandum.

would result in the termination of that officer's employment. According to Mayor Reed, he had directed Ernest Finley, who at that time was the chief of the MPD, to notify the MPD's officers of the new policy in writing which, apparently, did not occur. Mayor Reed testified that he had terminated Ferguson's employment based on that unwritten zero-tolerance policy. On October 20, 2020, Mayor Reed notified Ferguson of the termination of his employment.

During the September 8, 2020, hearing, Mayor Reed explained that he held the City's police officers to a higher standard than the public and that he did not want them to use chokeholds, which, he said, can have lethal consequences, on citizens.[7] Mayor Reed reviewed the videotapes, photographs, and other materials in the investigative file regarding the chokehold incident, along with Ferguson's personnel file. Mayor Reed testified that, even considering Ferguson's relatively lengthy and distinguished law-enforcement career, he had determined that the

---

[7]Nevertheless, in 2021, the MPD adopted a written directive allowing chokeholds in situations in which deadly force is justified. The parties disputed whether the 2021 policy would have authorized Ferguson to employ a chokehold had it been in effect at the time of the chokehold incident.

12

violation of the 2016 policy warranted the termination of Ferguson's employment.

Analysis

The evidence and the certiorari standard of review compel reversal of the final judgment. Ample legal evidence in the record of the board's proceedings sustains the findings that Ferguson violated the 2016 policy against "choking of a subject" and the directive requiring reporting of that prohibited use of force. Ferguson stipulated that he had engaged the suspect in a chokehold, and he testified that he had not completed and submitted a defensive-action report. Ferguson was notified that his employment could be terminated for violating the 2016 policy, and Mayor Reed testified as to the process and reasoning behind his decision to apply the zero-tolerance policy against Ferguson for his impermissible use of force on the suspect involved in the chokehold incident.

Ferguson presented competing evidence questioning the applicability of the 2016 policy and the directive. From some of the testimony, the board could have reasonably found that the 2016 policy prohibited the use of chokeholds at the time of the chokehold incident

and that, despite Corkran's opinion, Ferguson was required to file a defensive-action report based on the suspect's claim that Ferguson was restricting his ability to breathe during the prohibited use of force. Although this court may not have reached the same determinations as the board, its findings were based on legitimate inferences from the legal evidence. See Alabama Elec. Coop., supra.

Ferguson also challenged the City's decision to terminate his employment, rather than impose lesser discipline, as being arbitrary and capricious. However, the board heard testimony describing the investigation into the circumstances of the chokehold incident by the MPD, the City, and the mayor's office. Before proceeding to termination, the City substantiated that Ferguson had violated the 2016 policy and the directive. The board heard directly from Mayor Reed as to why he had implemented the zero-tolerance policy and the extent of his review before deciding to implement the policy in Ferguson's case. From that testimony, the board could have determined that Mayor Reed had not acted arbitrarily and capriciously in reaching his decision. While the circuit court may have considered the termination of Ferguson's

14

employment too severe a penalty, on certiorari review it could not substitute its judgment for that of the board. See Hicks, supra; see also People ex rel. Manning v. McClave, 10 N.Y.S. 561, 561 (1890) (holding that, on petition for the writ of certiorari, "[t]he board of police was the judge of the amount of punishment to be inflicted for such violation, with which this court cannot interfere").

## Conclusion

For the foregoing reasons, we reverse the final judgment, and we remand this case with instructions for the circuit court to vacate its judgment and to enter a new judgment quashing the petition for the writ of certiorari.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Lewis, JJ, concur.