THOMPSON, Presiding Judge.
 

 The City of Birmingham Police Department (“the Department”) terminated Rebecca Dill’s employment on July 14, 2006, after she tested “positive” for marijuana in a random drug test. The City of Birmingham’s Employee Handbook required Dill to submit to random drug testing as a condition of her employment. Dill appealed the termination of her employment to the Jefferson County Personnel Board (“the Board”) on July 20, 2006. The Board appointed a hearing officer who presided over an ore tenus hearing. On December 6, 2006, the hearing officer issued written findings of fact and recommended that the Board sustain the termination of Dill’s employment. The Board heard oral arguments, and on March 27, 2007, it affirmed the hearing officer’s recommendation.
 

 Section 22 of the Board’s enabling act, Act No. 248, Ala. Acts 1945, as amended by Act No. 684, Ala. Acts 1977, provides in part:
 

 “The decision of the board based upon all proceedings before the board shall be final subject to appeal by either party to the circuit court to review questions of law and the question of whether or not the decision or order of the board is supported by the substantial and legal evidence.”
 

 Pursuant to § 22, Dill appealed the Board’s decision to the Jefferson Circuit Court, and Dill’s appeal was heard by a panel of three judges who “jointly review[ed] the record of the hearing before the [hearing officer and the] personnel board.” § 22, Act No. 248, Ala. Acts 1945, as amended by Act No. 684, Ala. Acts 1977. On October 4, 2007, the panel issued a unanimous judgment reversing the Board’s decision on the ground that it was not supported by substantial evidence. The City of Birmingham (“the City”) then petitioned this court for a writ of certiorari.
 
 [1]
 

 The transcript of the testimony presented to the hearing officer showed the following facts. At the time her employment was terminated, Dill was a police sergeant, had been employed by the Department for almost 20 years, and was several weeks away from vesting in her retirement. On Tuesday, June 6, 2006, at the request of her captain, Dill submitted to a random drug test. Dill submitted a urine specimen and signed a “donor affidavit” stating: “I certify that the specimen(s) sealed with the above specimen [identification] number was provided by me on this date and specimen(s) has not been altered.” The specimen was sent to a laboratory for testing, and the laboratory subsequently reported to the City that Dill’s specimen had tested positive for marijuana metabolites.
 
 [2]
 

 
 *365
 
 Pursuant to the City’s policy, the laboratory’s report was submitted to a medical-review officer, James Lance, who contacted Dill to determine if there was a “legitimate” reason for the positive result. Lance testified that, after several attempts, he contacted Dill by telephone on June 19, 2006, and that she offered no legitimate reason why she had tested positive for marijuana. Indeed, it is apparent from the record that Dill offered no reason for the positive result at that time. Lance verified that the prescription medication Dill was taking could not have produced the positive result.
 

 The urine specimen Dill submitted had been divided into two samples. Only one sample was tested by the laboratory; the other sample was to be retained, although it is unclear by whom, for up to one year. Lance testified that when he spoke with Dill, he advised her that she could have the other sample tested by an independent laboratory at a cost to her of about $100 but that he had never known a second test to produce a different result than a first test. According to Lance, he advised Dill that she had to decide within 72 hours whether to have the other sample tested. Dill chose not to have the other sample tested.
 

 Dill testified that she first learned about the positive test result when she spoke with Lance and that, at that time, she had no idea why she had tested positive for marijuana. According to Dill, because she could not afford to have the other urine sample tested, she asked Lance whether the testing could be done after she received her next paycheck. Dill stated that Lance advised her that the other sample had to be tested within 72 hours. Dill testified that she did not request a second test because she could not afford to pay for it at that time.
 

 Sergeant Harry Greenberg with the Department’s internal affairs division investigated the circumstances underlying Dill’s positive drug test. In the report of his investigation, Sgt. Greenberg recommended that the Department sustain the allegation that Dill had failed the drug test. Sgt. Greenberg testified that when he interviewed Dill, she indicated that she was uncertain why she had tested positive for marijuana but that she believed she must have been exposed to marijuana on the weekend before her Tuesday drug test.
 

 Sgt. Greenberg’s report of his interview with Dill shows that Dill advised him that the following events occurred. Dill went to a bar with her sister on Saturday night and became intoxicated. In the early morning hours, Dill and her sister left the bar with a man Dill knew only as “Cowboy.” In the parking lot, Dill stated that she wished she had a cigarette. In her interview with Sgt. Greenberg, Dill stated that she saw Cowboy take a package of cigarettes out of his pocket and take a cigarette out of the package. She stated that the cigarette looked like a normal cigarette without a filter. Cowboy then lit the cigarette and handed it to Dill. Dill stated that she took three or four puffs, but it tasted bad to her because she only smoked menthol cigarettes. Dill did not finish smoking the cigarette Cowboy gave her. Dill told Sgt. Greenberg that she believed the cigarette must have been marijuana.
 

 Before the hearing officer, Dill testified that she was shocked when she learned that she had tested positive for marijuana. She stated that she talked with her sister
 
 *366
 
 and tried to figure out what had caused the positive result. According to Dill’s testimony before the hearing officer, she had no independent recollection of her interaction with Cowboy. Rather, Dill testified that her sister told her that Cowboy had given her a cigarette and that she took four puffs from it before handing it back. According to Dill, she did not know what marijuana smelled like because her sense of smell was impaired as a result of sinus problems and a history of three breaks to her nose. Dill stated that she told Sgt. Greenberg that her recollection of that night came from her sister and that she asked Sgt. Greenberg several times to interview her sister, but that Sgt. Greenberg declined. Dill’s sister did not testify on Dill’s behalf before the hearing officer.
 

 Sgt. Greenberg testified that he did not recall Dill indicating that her statements regarding Cowboy came from her sister. The record of Sgt. Greenberg’s interview with Dill shows that she presented the recollection as her own. Sgt. Greenberg also denied that he had declined Dill’s requests to talk with her sister. Sgt. Greenberg testified that he made one unsuccessful attempt after his interview with Dill to contact Dill’s sister and confirm Dill’s story about Cowboy. Sgt. Green-berg testified that, for purposes of his determination as to the charges to be brought against Dill, the statement of a witness would have had very little bearing because of his understanding that the Department’s standard practice in response to testing positive on a drug test was termination of employment. Sgt. Green-berg stated that he understood that “the charges are simply testing positive on the drug test” and that “the other information would be hatched out in another forum.” Sgt. Greenberg subsequently prepared a notice that advised Dill that disciplinary action was contemplated against her and advised her of the charges against her.
 

 Dill was charged with violating several rules and regulations of the Board, the Department, and the Mayor’s Substance Abuse Policy (“the Policy”). The Policy provides that the “unlawful manufacture, distribution, dispensation, possession, presence, or use of a controlled substance (illegal drug or drug paraphernalia) is illegal and is grounds for dismissal.” Annetta Nunn, the chief of the Department at the time Dill’s employment was terminated, testified that the use or possession of, or unexplained positive test results indicating the use of, marijuana were prohibited by the City. Chief Nunn further testified that she found that Dill had violated those rules and regulations and that she had terminated Dill’s employment as a result.
 

 On August 7, 2006, three weeks after Dill’s employment was terminated and eight weeks after her original urine test, Dill submitted a hair sample for testing at another laboratory. That test showed a negative result for marijuana metabolites. Dill submitted into evidence before the hearing officer an article from a hair-testing service provider, although the article was not from the laboratory that tested Dill’s hair; that article stated that hair testing provided “up-to-90-day detection of drug use.” However, Dill did not present evidence specifying a length of time during which the test she took would detect drug use. Dill testified before the hearing officer that, because her hair test showed a negative result, she no longer believed that the cigarette Cowboy gave her contained marijuana.
 

 After making detailed findings of fact, the hearing officer concluded as follows:
 

 “[Dill] has not presented any credible evidence that the City violated any policies and/or procedures in its handling of the aforementioned incident. Even though [Dill] argued at the hearing of
 
 *367
 
 this matter that the City’s drug testing procedure was flawed in several respects, she did not produce any credible evidence to support this theory. Tellingly, the hearing record reflects that when offered the opportunity to have the urine collected on June 6, 2006 retested, [Dill] declined. [Dill] did submit to a drug hair test in August of 2006, which came back negative; however, this was approximately 6 to 8 weeks after the original test.
 

 “The Hearing Officer further concludes that it is highly unlikely that an individual of [Dill’s] experience and age would mistake a tobacco cigarette for a marijuana cigarette. Moreover, [Dill] offered no evidence to support her contention that her sense of smell was compromised such that she could not distinguish the smell of tobacco from that of marijuana. In sum, [Dill] has offered only conjecture and speculation as to the reason why she tested positive for marijuana.”
 

 The hearing officer then stated: “After viewing the entire record, I find, with great reluctance due to [Dill’s] length of service to the City, that the great weight of the evidence and testimony compels the conclusion that [Dill’s] termination be sustained.” The Board affirmed the hearing officer’s conclusions.
 

 The circuit court panel issued a judgment stating, in pertinent part, as follows:
 

 “The Plaintiff, Rebecca Dill, has served as a police officer for the City of Birmingham for nineteen years and ten months, which was only two months short of her retirement being vested. During that time her record was unblemished. She was terminated by the Chief of Police of the City of Birmingham for failing a random drug test.... In her defensef, Dill] claimed that she never knowingly ingested marijuana. Although the urine test indicated the presence of marijuana, a subsequent hair test was negative for the presence of marijuana. Therefore, the evidence was conflicting as to this issue. A review of this panel is whether or not the decision of the Personnel Board is supported by substantial and legal evidence. Substantial evidence means that character of evidence which would convince an unprejudiced thinking mind of the truth of the fact as to which the evidence is directed.
 

 “After a review of the record of the Personnel Board and consideration of the arguments presented by counsel, the Court concludes that the decision of the Personnel Board was not supported by substantial and legal evidence to support the Board’s decision relative to the charges against Officer Dill.”
 

 On appeal, the City argues that the Board’s decision was supported by substantial evidence and that the circuit court panel impermissibly substituted its judgment for that of the Board. In response, Dill maintains that the panel’s conclusion was correct and, focusing on the incident involving Cowboy and Sgt. Greenberg’s statement that standard practice in response to a positive drug test was termination of employment, argues that the City did not present substantial evidence that she knowingly ingested marijuana.
 

 When conducting certiorari review of a decision of a circuit court panel under § 22 of the Board’s enabling act, this court has stated the standard of review as follows:
 

 “ ‘Under the appropriate standard of review for cases before this court on cer-tiorari, this court is limited to a review of whether the circuit court properly applied the law and whether the decision is supported by any legal evidence.’
 
 Ex parte Jackson,
 
 733 So.2d [456,] 457 [ (Ala.Civ.App.1999) ]. Our supreme
 
 *368
 
 court has also held that in addition to the foregoing, the trial court must review the record to ensure that there had been no violation of a party’s fundamental rights.
 
 Evans v. City of Huntsville,
 
 [580 So.2d 1323 (Ala.1991) ]. The scope of appellate review of administrative actions is narrow; therefore, ‘[t]he determination of the weight and credibility of the evidence presented is solely within the province of the Board.’
 
 Ex parte Personnel Bd. of Jefferson County,
 
 440 So.2d [1106,] 1109 [ (Ala.Civ.App.1983) ].”
 

 Ex parte Dixon,
 
 841 So.2d 1273, 1278 (Ala.Civ.App.2002).
 
 See also Ex parte Jackson,
 
 733 So.2d 456, 457-58 (Ala.Civ.App.1999);
 
 Ex parte Cooper Green Hosp.,
 
 519 So.2d 1352, 1353 (Ala.Civ.App.1987); and
 
 Ex parte Smith,
 
 394 So.2d 45, 48 (Ala.Civ.App.1981). Additionally, this court has stated:
 

 “The Personnel Board acts as the trier of facts and has the duty to reach a determination regarding conflicting testimony.
 
 City of Mobile v. Mills,
 
 500 So.2d 20 (Ala.Civ.App.1986). When the Board utilizes a hearing officer, his finding of facts is presumed to be correct.
 
 Coleman v. Alabama Alcoholic Beverage Control Board,
 
 465 So.2d 1158 (Ala.Civ.App.1985).”
 

 Ex parte Cooper Green Hosp.,
 
 519 So.2d at 1353.
 

 The June 6, 2006, drug test was positive for marijuana metabolites. The Board adopted the hearing officer’s determination that Dill presented no credible evidence indicating that the City’s testing procedures were flawed. Lance testified that Dill offered no legitimate reason for the positive drug test. Dill’s testimony before the hearing officer regarding the incident involving Cowboy conflicted significantly with the statements she made to Sgt. Greenberg during his investigation. The hearing officer concluded that Dill’s testimony that she could not distinguish between the smell of marijuana and tobacco was “highly unlikely.” The hearing officer also concluded that Dill’s explanation of the positive test result was “conjecture and speculation.” It thus appears that the hearing officer’s recommendation and the Board’s decision based upon that recommendation were supported by substantial evidence.
 

 The panel apparently based its reversal on the report of Dill’s August 7, 2006, hair test. The panel correctly concluded that the results of Dill’s June 6, 2006, urine test and the results of her August 7, 2006, hair test seemingly conflicted. However, the panel failed to consider the hearing officer’s determination regarding the weight and credibility of that evidence.
 
 See Ex parte Dixon,
 
 841 So.2d at 1278 (‘“[t]he determination of the weight and credibility of the evidence presented is solely within the province of the Board’ ” (quoting
 
 Ex parte Personnel Bd. of Jefferson County,
 
 440 So.2d at 1109));
 
 Ex parte Cooper Green Hosp.,
 
 519 So.2d at 1353 (“The Personnel Board acts as the trier of facts and has the duty to reach a determination regarding conflicting testimony.”).
 

 The hearing officer emphasized that, although the August 7, 2006, hair test produced a negative result, that test was conducted a full eight weeks after the original urine test. Additionally, the report regarding the results of the hair test failed to specify the length of time during which that test could detect drug use. Although Dill presented an article to the hearing officer stating that hair tests could detect drug use “up-to-90-days,” she failed to present any evidence showing that the August 7, 2006, test of her hair could detect drug use during that length of time.
 

 In contrast, the hearing officer received evidence indicating that the urine testing procedures utilized with respect to the
 
 *369
 
 June 6, 2006, test had been approved for federal employees. He concluded that Dill had failed to present any credible evidence indicating that the City’s urine testing procedures were flawed. It is apparent from the hearing officer’s conclusions that he placed greater weight on the results of the June 6, 2006, urine test than on the August 7, 2006, hair test. The panel erred in reweighing the evidence presented to the Board. When viewing the evidence with the proper deference to the hearing officer’s factual conclusions regarding the weight and credibility of the evidence, it is apparent that the panel’s decision was in error.
 

 Out of an abundance of caution, we will address Dill’s argument that the panel’s decision should be affirmed because, according to Dill, the City did not present substantial evidence that she knowingly ingested marijuana. Dill argues that this court’s holding in
 
 Wood v. State Personnel Board,
 
 705 So.2d 413 (1997), required the City to prove that she knowingly ingested marijuana and that evidence of a positive drug test was insufficient to support the Board’s decision. In
 
 Wood,
 
 a State Department of Corrections (“DOC”) employee “was terminated from his employment because his urine tested ‘positive’ for marijuana in a random drug screen.” 705 So.2d at 415. The employee challenged the DOC’s regulation that prohibited drug use, arguing that it created a “conclusive presumption” based on a positive drug test that the employee was a drug user and thus “denied him procedural due process because it did not allow for a defense of ‘unknowing ingestion.’ ” 705 So.2d at 419. This court found that unintentional ingestion was a valid defense to a positive drug test and that the regulation at issue prohibited only
 
 “knowing
 
 ingestion” of a controlled substance. 705 So.2d at 421. However, this court concluded that the employee’s procedural due-process rights had not been denied because he was permitted to offer evidence that he did not knowingly ingest the controlled substance.
 
 Id.
 
 Because the hearing officer made no factual findings as to the credibility of the employee’s defense, this court remanded the action for a factual determination on that issue.
 
 Id.
 

 In reviewing a similar case from Florida, this court in
 
 Wood
 
 recognized that the Florida court “did not call into question the fact that the employer must prove a knowing consumption of the drug and that unintentional ingestion could, in certain circumstances, constitute a defense.” 705 So.2d at 421. Dill relies heavily on this language to support her argument that the City did not prove that she knowingly ingested marijuana. However, in
 
 Wood,
 
 this court concluded that unintentional ingestion is a valid defense to a termination of employment based on a positive drug test. 705 So.2d at 420.
 
 Wood
 
 does not expressly require the City to prove knowing ingestion; rather, it recognizes the employee’s right to raise unintentional ingestion as an affirmative defense. In remanding the action in
 
 Wood,
 
 this court recognized that, when such a defense is raised, the determination as to whether an employee’s ingestion of controlled substances was unintentional is for the fact-finder. In this case, unlike in
 
 Wood,
 
 the hearing officer, as the fact-finder, determined that Dill’s defense lacked credibility and was based on conjecture and speculation. We must defer to that factual finding.
 
 See, e.g., Dixon,
 
 supra. Although the City did not present direct evidence indicating that Dill had knowingly ingested marijuana,
 
 i.e.,
 
 through eyewitness testimony or by an admission from Dill, it presented substantial evidence creating an inference that she had done so.
 

 
 *370
 
 We note also that the determination of a witness’s credibility is within the province of the Board and its hearing officer.
 
 See, e.g., Dixon,
 
 supra. It is apparent from the hearing officer’s findings and recommendations that he concluded that Dill’s testimony that she did not knowingly ingest marijuana was not credible. This conclusion is supported by the fact that Dill’s testimony conflicted with the records of her statements to Sgt. Greenberg.
 

 Like the hearing officer, in light of Dill’s nearly 20 years of service to the City, we regret the outcome of this decision. However, based on evidence in the record on appeal and on the applicable standard of review, we must reverse the panel’s decision.
 

 REVERSED AND REMANDED.
 

 PITTMAN, BRYAN, MOORE, and THOMAS, JJ., concur.
 

 [1]
 

 . Section 22 provides: "The opinion of a majority of three judges to whom such case is assigned shall be determinative of the case and there shall be no appeal to any appellate court of Alabama.” § 22, Act No. 248, Ala. Acts 1945, as amended by Act No. 684, Ala. Acts 1977. However, this court has consistently held that parties have a right to review of a panel's decision via a petition for the common-law writ of certiorari.
 
 See, e.g., Ex parte Dixon,
 
 841 So.2d 1273, 1277-78 (Ala.Civ.App.2002);
 
 Ex parte Jackson,
 
 733 So.2d 456, 457-58 (Ala.Civ.App.1999);
 
 Holloway v. Personnel Bd. of Jefferson County,
 
 528 So.2d 341, 342 (Ala.Civ.App.1988); and
 
 Ex parte Cooper Green Hospital,
 
 519 So.2d 1352, 1353 (Ala.Civ.App.1987).
 

 [2]
 

 . Dill raised questions before the hearing officer regarding the collection process and the reliability of the testing procedures. However, in her brief on appeal, Dill states that she
 
 *365
 
 appealed to the three-judge panel of the circuit court on the issue whether her ingestion of marijuana was knowing and unlawful. Accordingly, we will not discuss the collection and testing procedures in detail.