MOORE, Judge.
The City of Birmingham seeks certiorari review of a judgment entered by a three-judge panel of the Jefferson Circuit Court reversing a decision of the Jefferson County Personnel Board terminating the employment of Sean F. Hudson. We reverse the decision of the three-judge panel.

Facts and Procedural History

Hudson was employed as a police officer by the City of Birmingham Police Department (“the BPD”) for approximately 12 years; he had been assigned to work at the Birmingham International Airport (“the airport”) for approximately 10 of those 12 years. Hudson’s duties at the airport required him to monitor a locked gate at “Checkpoint C” on the morning shift. According to Hudson, the Transportation Security Administration (“TSA”), a component of the federal Department of Homeland Security, had taken over security at the airport in 2008. According to Edward Downing, the assistant federal security director for screening at TSA, when passengers at the airport travel through a checkpoint, there is certain property that passengers may not take onto an airplane. At that point, according to Downing, passengers have a choice — they can take the item out of the airport, they can place certain items in their luggage that goes “into the belly of the plane,” or they can abandon the item. If the passengers abandon the item, it is deposited by a TSA agent into a bin that is used specifically for collection of voluntarily abandoned property (“VAP”).
TSA Directive No. 200.51, regarding “Disposition of Lost or Unclaimed Personal Property Found in TSA-Occupied Spaces,” states in a footnote that “[l]ost personal property is distinct from prohibited items voluntarily abandoned to the TSA at screener checkpoints, also known as voluntarily abandoned property (VAP).” TSA Directive No. 200.52, regarding “Care, Handling, and Disposition of Voluntarily Abandoned Property,” states that “VAP deposited in collection bins shall not be recovered by, and will not be returned to, passengers. Upon voluntary abandonment of the prohibited item, the item immediately becomes the property of the Federal Government.” Directive No. 200.52 further instructs that VAP is to be segregated by TSA according to different category types. The first category, VAP with an estimated resale value of less than $500, “may be retained for official mission use only, transferred to another federal agency without reimbursement, donated, or abandoned or destroyed. If donations are authorized, they always take priority over destruction. A donation in lieu of destruction is authorized to public bodies only.” (Emphasis in original.) Downing testified that “official mission use” would include TSA functions; in other words, *154 TSA can use the items in the VAP bin that are valued at less than $500 at the airport. He stated that “donated” in the directive means given away to the State of Alabama.
Column C on Attachment A to Directive No. 200.52, entitled “Disposition Guidance Table for [VAP] Prohibited Items,” includes a list of certain items that should be destroyed; some of the items included in that column have an asterisk next to them, indicating that those are “additional items that may be donated to a public body in lieu of Abandonment and Destruction.” Included in those items denoted with an asterisk are knives and box cutters, among other items. Column D on Attachment A lists items that are to be donated, and it includes screwdrivers, among other items.
Downing stated that the VAP bin is locked and that only TSA employees have access to the key to the lock on the VAP bin. Hudson testified, however, that, at one time, he had authorization to go into the VAP bin to take out dangerous items. He stated that TSA had supplied the police precinct with a key when it took over in 2003. According to Hudson, that key was lost, so he began to open the VAP bin any way he could. Hudson testified that he would take things out of the VAP bin if he needed them for his official use and that he had given some items to others to use in construction and for other official uses at Checkpoint C, but that he had never kept any of those items or taken them home with him. Hudson stipulated that he had opened the VAP bin with a screwdriver. Hudson testified that he knew that the area was videotaped and that he was being recorded. He stated that other police officers assigned to work at the airport also regularly accessed the VAP bin to obtain items therein and that it was standard operating procedure at the airport for them to do so. According to Hudson, the VAP bin was labeled “throwaway bin,” and he considered its contents to be trash.
Captain William John Crane testified that, at some point, he was the commander of the east precinct of the BPD and that he had overseen officers that were assigned to the airport. Captain Crane testified that, in his opinion, it is not important for him to know what the rules and regulations of the airport are because he relies on the BPD rules, which require his officers to turn in property that comes within the control of a police officer. Sergeant Matthew Rostowski, who had supervised Hudson and other officers working at the airport, testified that he did not recall seeing anything in the manuals of rules and regulations at the airport regarding VAP. Sergeant Rostowski testified that he had had a conversation with Hudson and Captain Crane regarding what to do with items that were found at the airport and that, according to BPD’s rules and regulations, officers are supposed to take any found property, to fill out a property inventory, and to take the property to the property room at the BPD headquarters. Sergeant Rostowski stated, however, that working in the airport creates a different working condition because property is constantly being found and he, Captain Crane, and Hudson were wrestling with the problem of discerning whether items were properly categorized as property found by the police department that they were taking charge of or whether those items were simply articles left by a passenger that needed to go to the lost and found area at the airport. Sergeant Rostowski stated that it could be said that, because of that problem, he had deviated from the normal rules and regulations of the BPD.
Tabitha Kline, Edward Lewis Hannon, Ronald Edward Youngblood, Jr., and Manual Diaz, all police officers employed by *155 the BPD, testified that they had been assigned to the airport and that they had not received any instruction as to what to do with VAP. Preston Weed, who is also an officer with the BPD, had also been assigned to the airport. Officer Weed testified that, when TSA first assumed authority at the airport, it was making policies as it went along and that TSA had allowed the officers to take knives that had been abandoned and that, at one point, it was the standard operating procedure of TSA to allow police officers to take what they wanted from the property that had been abandoned by passengers. Another BPD police officer, Darryl Trucks, testified that he had been assigned to the airport and that one of the TSA agents had told him that TSA agents simply throw away the items that go into the VAP bin and that TSA does not have any use for those items.
Downing testified that, on May 30, 2009, he learned that, on several occasions, Hudson had opened the VAP bin with a screwdriver and had removed items. On June 2, 2009, Downing reported to the BPD that he had videotaped footage of Hudson forcing entry into the VAP bin. Sergeant David Grayson, who is assigned to the Internal Affairs Division of the BPD, testified that he initiated an investigation in response to Downing’s complaint. Sergeant Grayson testified that he had spoken with two airport maintenance workers who had received property from Hudson that had been taken from the VAP bin for them to use in construction or other repair work at the airport. Sergeant Grayson also interviewed a number of BPD officers who had been assigned to the airport. According to Sergeant Grayson, he determined from those interviews that, when TSA took over security at the airport, there may have been a transition period when there was not a clear understanding of how property was handled but that, once TSA took full control, the officers that he had interviewed had not been given any indication that they were allowed to remove property from the VAP bin. Sergeant Grayson stated that he determined that Hudson had broken into the VAP bin without a key, that Hudson did not have a right to use the items in the VAP bin, and that Hudson’s actions amounted to theft. Sergeant Grayson stated that, upon completing his investigation, he turned the matter over to BPD Police Chief A.C. Roper.
Hudson was given notice that possible personnel action, which could result in his suspension, demotion, or dismissal, was being contemplated against him and that a determination hearing was scheduled for July 7, 2009. Hudson was informed that he was charged with “entering” the locked VAP bin with a screwdriver, removing property therefrom, and giving property from the VAP bin to airport maintenance workers. Specifically, Hudson was charged with violating the Personnel Board of Jefferson County Rules and Regulations, including Rule 12.2(e), “Conduct unbecoming a Classified Employee”; Rule 12.2(g), “Incompetency or inefficiency”; Rule’ 12.2Q), “Neglect of duty”; Rule 12.2(J), “Violation of any rule or regulation of the Appointing Authority, or failure to comply with instructions made and given by a superior officer or supervisor”; Rule 12.2(m), “Violation of any of the provisions ... of these Rules”; and Rule 12.2(p), “Any'other legitimate and nondiscriminatory reason that constitutes good cause for disciplinary action, is reasonably specific, is consistent with ... these Rules and is not motivated by any non-work-related preference or animus for or against any person.” Hudson was also charged with violating additional BPD Rules and Regulations, including Section II of Procedure Number 109-3, which provides: “Members *156 will direct or coordinate their efforts in carrying out the functions of the Department in such a manner as will tend to establish and maintain the highest standard of efficiency”; Section VI, Subsection A-8, of Procedure Number 110-2, regarding “Neglect or inattention to duty”; Procedure Number A-36, regarding “Any other act or omission contrary to good order and discipline or constituting a violation of any of the Rules and Regulations of the Department, or of any Department order”; and Section I of Procedure Number 116-41, regarding conversion of impounded property, which provides: “Members and/or employees of the Birmingham Police Department shall not, under any circumstances, manufacture, or destroy, or convert to his own use any evidence or other material found in connection with an investigation or any property taken or received for safekeeping.”
The determination hearing was held on July 7, 2009. Chief Roper and a number of deputy chiefs were present at the hearing. According to Chief Roper, the deputy chiefs sit through the determination hearing and discuss the case and give recommendations, but the ultimate decision is his. Chief Roper testified that he decided that Hudson’s employment should be terminated because the investigation revealed that Hudson had stolen property from the VAP bin and the BPD could not have its employees stealing. According to Chief Roper, Hudson did not have the right or authority to break open the locked VAP bin. Chief Roper testified, however, with regard to the alleged violation of BPD Procedure Number 116-41, that the items deposited into the VAP bin are not evidence, other material found in connection with an investigation, or property taken or received for safekeeping.
A number of the deputy chiefs who were present at the determination hearing testified at a subsequent hearing before a hearing officer that termination was appropriate because Hudson had stolen items. Although none of the deputy chiefs worked at the airport, they spoke to Hudson’s violations of the BPD’s rules without reference to the regulations of the airport or TSA. They each testified that the BPD’s rules do not differentiate between lost property and VAP.
The charges against Hudson were sustained, and Hudson was dismissed from his position as a police officer with the BPD, effective at the close of business on August 7, 2009. On August 10, 2009, Hudson appealed the BPD’s decision. A hearing was held on February 26, 2010, and, on March 15, 2010, the hearing officer filed his findings of fact and recommendation, which stated, in pertinent part:
“Respondent, Sean Hudson, a long term Police Officer for the City of Birmingham, was assigned to the Birmingham Airport.
“On June 2, 2009, Edwin Downing, Assistant Federal Security Director of Screening for the Transportation Security Administration (here[in]after ‘TSA’) filed a complaint that Hudson and another Birmingham Police Officer opened a locked property cabinet that was under TSA control and removed property without permission.
“Downing was called as a witness and testified that when one of his officers made him aware that some change had been removed from the locked cabinet, he reviewed videotapes of the TSA checkpoint at Terminal C and observed Hudson and another officer forcing their way into the TSA cabinet.
“Hudson stipulated that he had indeed entered the locked cabinet. Hudson testified that he thought it was okay to force his way into the cabinet as a form of ‘dumpster diving.’ Hudson testified *157 that he gave away items recovered from this area to airport workers.
“However, regardless of motivation, Chief Roper testified [that] having police officers break into another’s property without authorization violated the City of Birmingham’s rules of deportment for Police Officers.
“Hudson contends that after 2001 and the establishment of the TSA, there was a lack of procedures and/or training regarding the disposal of ‘voluntary abandoned property.’ While that may have been true in 2001 and/or 2002, by 2009— some seven years later — Security Checkpoint C as testified to by Mr. Downing was firmly under TSA control. Hudson had no authority to take it upon himself to re-distribute the property, abandoned or otherwise, which had been turned over to the federal officials.
“Prior to terminating Mr. Hudson, Chief Roper testified that he reviewed the matter with Deputy Chiefs Fisher, Hinton, Lampkin and Tubbs (each of whom testified in support of the termination) and that Sergeant David Gray-son conducted an investigation as to the procedures for YAP property at the airport. Deputy Chief Tubbs testified that officers breaking into property without authority, ‘strikes at the integrity of the department.’ The other Deputy Chiefs testified to the same.
“Sergeant Grayson interviewed other officers assigned to the Birmingham airport who confirmed that it had been many years since Birmingham Police had any authority for ‘voluntary abandoned property1 given to TSA personnel.

“CONCLUSIONS

“The Birmingham Police Department established that Hudson’s conduct was without authority and violated standards expected for their officers. Even though Officer Hudson argued at the hearing that termination was too severe a penalty and there was a lack of training, the Police Department has to be allowed to make personnel decisions to uphold the department standards.

“RECOMMENDATION

“After viewing the entire record, I find that termination as implemented by the Police Department should be sustained.”
The Personnel Board of Jefferson County (“the Board”) entered an order on April 13, 2010, adopting the hearing officer’s findings of fact and recommendation, thereby affirming the BPD’s decision to terminate Hudson’s employment. Hudson filed a notice of appeal from the Board’s order to the Jefferson Circuit Court on April 21, 2010. On June 25, 2010, a hearing was set before a panel of three judges on August 13, 2010. See Act No. 248, § 22, Ala. Acts 1945, as amended by Act No. 684, Ala. Acts 1977 (stating that an appeal from the Board’s order lies in the circuit court and that the presiding judge of the circuit court shall assign the case to a panel of three judges for review). The three-judge panel entered an order on August 18, 2010, which stated, in pertinent part:
“The three (3) judge panel assigned to this case hereby unanimously orders, after review of the record and oral arguments, that Police Officer Sean F. Hudson be restored to his position as a police officer with the City of Birmingham with full back pay and benefits.
“The panel has determined that the termination of the plaintiff, Sean F. Hudson, was arbitrary and capricious. The panel heard testimony that no misappropriation for personal use was involved. The panel is convinced that, based upon the record and testimony, appropriate policies and procedures *158 were not in place following the transition from the City of Birmingham to the Transportation Security Authority of the Department of Homeland Security.”
The City of Birmingham petitioned this court for a writ of certiorari on August 26, 2010.

Discussion

The City of Birmingham asserts that the three-judge panel erred by overturning the Board’s decision because, it argues, the Board’s decision was based on fixed standards and should be affirmed.
“When conducting certiorari review of a decision of a circuit court panel under § 22 of the Board’s enabling act, this court has stated the standard of review as follows:
“ ‘ “Under the appropriate standard of review for cases before this court on certiorari, this court is limited to a review of whether the circuit court properly applied the law and whether the decision is supported by any legal evidence.” Ex parte Jackson, 733 So.2d [456,] 457 [ (Ala.Civ.App.1999) ]. Our supreme court has also held that in addition to the foregoing, the trial court must review the record to ensure that there had been no violation of a party’s fundamental rights. Evans v. City of Huntsville, [580 So.2d 1323 (Ala.1991) ]. The scope of appellate review of administrative actions is narrow; therefore, “[t]he determination of the weight and credibility of the evidence presented is solely within the province of the Board.” Ex parte Personnel Bd. of Jefferson County, 440 So.2d [1106,] 1109 [ (Ala.Civ.App.1983) ].’
“Ex parte Dixon, 841 So.2d 1273, 1278 (Ala.Civ.App.2002). See also Ex parte Jackson, 733 So.2d 456, 457-58 (Ala.Civ.App.1999); Ex parte Cooper Green Hosp., 519 So.2d 1352, 1353 (Ala.Civ.App.1987); and Ex parte Smith, 394 So.2d 45, 48 (Ala.Civ.App.1981). Additionally, this court has stated:
“ ‘The Personnel Board acts as the trier of facts and has the duty to reach a determination regarding conflicting testimony. City of Mobile v. Mills, 500 So.2d 20 (Ala.Civ.App.1986). When the Board utilizes a hearing officer, his finding of facts is presumed to be correct. Coleman v. Alabama Alcoholic Beverage Control Board, 465 So.2d 1158 (Ala.Civ.App.1985).’
“Ex parte Cooper Green Hosp., 519 So.2d at 1353.”
Ex parte City of Birmingham, 7 So.3d 363, 367-68 (Ala.Civ.App.2008).
After reviewing the record before us, we agree with the City of Birmingham that the Board’s decision was supported by substantial evidence and that the three-judge panel erred by failing to affirm the Board’s decision. The testimony presented to the hearing officer indicated that, although there had been some confusion regarding the handling of VAP at the onset of TSA’s authority at the airport, the rules and regulations of TSA were clear that items in the VAP bin belonged to the federal government and were to be handled by TSA employees. Although Hudson presented some evidence indicating that it was standard operating procedure at the airport to access the VAP bin and that he had had authority and a key to access the bin, it was clear that Hudson no longer possessed a key to the locked bin and that he had accessed the bin by prying it open. Although it is arguable based on the evidence presented that Hudson could not be properly dismissed for violating the BPD’s rule prohibiting conversion of property for personal use, Hudson was actually dismissed for violating several rules of *159 both the BPD and the Board, including rules prohibiting acts “contrary to good order and discipline.” We note that it is not unreasonable to conclude that prying open a locked bin and removing items therein that do not belong to the person accessing the bin is contrary to good order. As such, we conclude that the Board’s decision is supported by substantial evidence and properly applied the law, and, thus, it must be upheld. We therefore reverse the decision of the three-judge panel and remand this cause with instructions that the three-judge panel enter a judgment affirming the Board’s decision.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.